UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

REBECCA BROWN                                  CIVIL ACTION NO. 6:13-cv-00597

VERSUS                                         JUDGE DOHERTY

CAROLYN W. COLVIN,                             MAGISTRATE JUDGE HANNA
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

## **REPORT AND RECOMMENDATION**

Before this Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further consideration consistent with this report and recommendation.

### **BACKGROUND**

The claimant, Rebecca Brown, was born on February 27, 1963.[1] She completed high school and attempted vocational training in the field of nursing.[2] She has work experience as a home attendant for a blind adult and as a child monitor.[3] On July 2, 2010, at the age of forty-seven, she applied for supplemental security income

---

[1]   Rec. Doc. 7-1 at 120.

[2]   Rec. Doc. 7-1 at 36.

[3]   Rec. Doc. 7-1 at 52.

benefits, alleging a disability onset date of July 5, 1990.[4] At the time of the hearing, she was forty-eight years old, unmarried, and living with her adult son who was attending community college.[5] She is now fifty-one. She testified that she has not worked since she stopped caring for her grandchildren in April 2010,[6] can stand or walk for only about thirty to thirty-five minutes without her foot swelling;[7] that she does not take showers but can take baths;[8] that when she washes dishes she stays on her feet for not more than ten minutes;[9] that the few meals she prepares are primarily sandwiches;[10] and that the small amount of housework she performs is done for very short periods of time with frequent rest breaks.[11] She also testified that she sleeps a great deal of the day and night due to the side effects from her medication.[12]

---

[4] Rec. Doc. 7-1 at 120.

[5] Rec. Doc. 7-1 at 40.

[6] Rec. Doc. 7-1 at 34, 36, 49.

[7] Rec. Doc. 7-1 at 39.

[8] Rec. Doc. 7-1 at 46.

[9] Rec. Doc. 7-1 at 50.

[10] Rec. Doc. 7-1 at 47.

[11] Rec. Doc. 7-1 at 41-42.

[12] Rec. Doc. 7-1 at 41-42.

In 1990, Ms. Brown was attacked, beaten, and raped; to save her life, she jumped out a window, which resulted in a severe injury to her left foot.[13] She subsequently underwent seven surgical procedures on the foot.[14] She continues to suffer the effects of that injury, both physically and also with anxiety and depression. She has also developed hypertension, which has progressively worsened, has frequently been described as "uncontrolled,"[15] and was described by one treating physician as "chronic malignant hypertension."[16] Dr. Herman Toliver, who examined Ms. Brown at the request of Disability Determination Services, noted that "[h]er blood pressure is extremely high today and is very uncontrolled."[17] In Dr. Toliver's office, her blood pressure was 213/124.[18]

On two occasions, Ms. Brown's blood pressure was so high that the cardiology clinic at University Medical Center sent her to the hospital's emergency room for

---

[13]   Rec. Doc. 7-1 at 231

[14]   Rec. Doc. 7-1 at 222, 231.

[15]   Rec. Doc. 7-1 at 238, 239, 240, 244, 245, 259, 269, 279, 309, 310.

[16]   Rec. Doc. 7-1 at 240.

[17]   Rec. Doc. 7-1 at 224.

[18]   Rec. Doc. 7-1 at 223.

evaluation on November 11, 2010[19] and again on February 17, 2011.[20] On those dates, her blood pressure was 231/118[21] and 222/127.[22] Between those two incidents, on December 1, 2010, she was treated in the emergency room for chest pain, and her blood pressure was 211/110.[23] At the time of the hearing, she was taking eight different blood pressure medications.[24] These medications cause drowsiness, sedation, and dizziness.[25]

In January 2011, a determination was made that Ms. Brown is not disabled.[26] She requested a hearing,[27] which was held on October 28, 2011 before Administrative Law Judge ("ALJ") Kelley Day.[28]

---

[19]   Rec. Doc. 7-1 at 283-287.

[20]   Rec. Doc. 7-1 at 253-254.

[21]   Rec. Doc. 7-1 at 283.

[22]   Rec. Doc. 7-1 at 253.

[23]   Rec. Doc. 7-1 at 270.

[24]   Rec. Doc. 7-1 at 43.

[25]   Rec. Doc. 7-1 at 306.

[26]   Rec. Doc. 7-1 at 60.

[27]   Rec. Doc. 7-1 at 76.

[28]   A transcript of the hearing is found in the record at Rec. Doc. 7-1 at 32-58.

The ALJ issued an unfavorable ruling on January 24, 2012.[29] Ms. Brown requested review by the Appeals Council, but it was denied.[30] Therefore, the ALJ's ruling is the Commissioner's final decision. In March 2013, Ms. Brown instituted this lawsuit, seeking judicial review of the Commissioner's adverse decision.[31] Ms. Brown now argues that the Commissioner erred in failing to find that she is disabled because of her disorders.

## ASSIGNMENT OF ERRORS

Ms. Brown contends that the Commissioner erred in finding her not disabled. More specifically, she contends, first, that the ALJ failed to give controlling weight to the medical opinions of her treating physician or properly explain why his opinions were discounted, and, second, that the ALJ failed to take into account the side effects of her numerous blood pressure medications when evaluating her residual functional capacity.

## STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to determining whether the decision was supported by substantial evidence and whether the proper

---

[29] Rec. Doc. 7-1 at 16-26.

[30] Rec. Doc. 7-1 at 4.

[31] Rec. Doc. 1.

legal standards were applied in reaching the decision.[32]  If the Commissioner's findings are supported by substantial evidence, they must be affirmed.[33]  Substantial evidence is more than a mere scintilla and less than a preponderance.[34]  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.[35]  Finding substantial evidence requires scrutiny of the entire record as a whole.[36]  In applying this standard, the court may not re-weigh the evidence or substitute its judgment for that of the Commissioner.[37]

A claimant seeking Social Security benefits bears the burden of proving that he or she is disabled.[38]  Disability is defined in the Social Security regulations as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than

---

[32] *Boyd v. Apfel,* 239 F.3d 698, 704 (5th Cir. 2001); *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000).

[33] *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[34] *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

[35] *Boyd v. Apfel,* 239 F.3d at 704.

[36] *Singletary v. Bowen*, 798 F.2d 818, 823 (5th Cir. 1986).

[37] *Boyd v. Apfel,* 239 F.3d at 704; *Carey v. Apfel*, 230 F.3d at 135.

[38] *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005); *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992); *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990); *Fraga v. Bowen*, 810 F.2d 1296, 1301 (5th Cir. 1987).

12 months."[39] Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit.[40]

The Commissioner uses a sequential five-step inquiry to determine whether a claimant is disabled. At step one, an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of medical findings. At step two, an individual who does not have a severe impairment will not be found disabled. At step three, an individual who meets or equals an impairment listed in the regulations at 20 C.F.R. Part 404, Subpart P, Appendix 1 will be considered disabled without consideration of vocational factors. If an individual is capable of performing the work he has done in the past, a finding of not disabled must be made at step four. If an individual's impairment precludes him from performing his past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if the claimant can perform any other work at step five.[41]

---

[39] 42 U.S.C. § 423(d)(1)(A).

[40] 20 C.F.R. § 404.1572(a)-(b).

[41] *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991), summarizing 20 C.F.R. § 404.1520(b)-(f). See, also, *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d 267, 271-72 (5th Cir. 2002); *Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity[42] by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the claimant's record.[43] The claimant's residual functional capacity is used at the fourth step to determine if the claimant can still do his past relevant work, and is used at the fifth step to determine whether the claimant can adjust to any other type of work.[44]

The claimant bears the burden of proof on the first four steps.[45] At the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[46] This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[47] If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to

---

[42] 20 C.F.R. § 404.1520(a)(4).

[43] 20 C.F.R. § 404.1545(a)(1).

[44] 20 C.F.R. § 404.1520(e).

[45] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[46] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[47] *Fraga v. Bowen*, 810 F.2d at 1304.

rebut this finding.[48] If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[49]

In this case, the Commissioner found, at step one, that Ms. Brown has not engaged in substantial gainful activity since her application date of June 14, 2010.[50] That finding is supported by evidence in the record.

At step two, the ALJ found that Ms. Brown has the following severe impairments: hypertension, arthritis of the left ankle, depression, and anxiety.[51] This finding is also supported by evidence in the record.

At step three, the ALJ found that Ms. Brown does not have an impairment or a combination of impairments that meets or medically equals a listed impairment.[52] Ms. Brown does not argue that this finding was incorrect.

---

[48] *Perez v. Barnhart*, 415 F.3d at 461; *Masterson v. Barnhart*, 309 F.3d at 272; *Newton v. Apfel*, 209 F.3d at 453.

[49] *Anthony v. Sullivan*, 954 F.2d at 293, citing *Johnson v. Bowen*, 851 F.2d 748, 751 (5th Cir. 1988). See, also, 20 C.F.R. § 404.1520(a)(4).

[50] Rec. Doc. 7-1 at 18.

[51] Rec. Doc. 7-1 at 18.

[52] Rec. Doc. 7-1 at 18.

The ALJ then found that Ms. Brown retains the residual functional capacity to perform sedentary work with certain physical tasks excluded.[53] Ms. Brown argues that the ALJ improperly evaluated her residual functional capacity.

At step four, the ALJ found that Ms. Brown is not capable of performing any prior relevant work.[54] Ms. Brown does not disagree with this finding.

At step five, the ALJ found that there are jobs that exist in the national economy that Ms. Brown can perform; accordingly, the ALJ found that Ms. Brown is not disabled.[55] Ms. Brown argues that the Commissioner's conclusion that she is not disabled is erroneous.

## DISCUSSION

Ms. Brown's first argument is that the ALJ failed to give controlling weight to the opinions of her treating physician, Dr. Troy Guidry, or, alternatively, to properly explain why Dr. Guidry's opinions were discounted. Her second argument is that the ALJ failed to consider the side effects of her numerous blood pressure medication when assessing her residual functional capacity.

---

[53] Rec. Doc. 7-1 at 21.

[54] Rec. Doc. 7-1 at 24.

[55] Rec. Doc. 7-1 at 25-26.

### A.   THE PROPER WEIGHT TO BE GIVEN TO DR. GUIDRY'S OPINIONS

The ALJ has sole responsibility for determining the claimant's disability status.[56] Although a treating physician's opinions are not determinative, the opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight by the ALJ in determining disability.[57] In fact, when a treating physician's opinion regarding the nature and severity of an impairment is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give that opinion controlling weight.[58] If an ALJ declines to give controlling weight to a treating doctor's opinion, he may give the opinion little or no weight – but only after showing good cause for doing so.[59] Good cause may be shown if the treating physician's opinion is conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or is otherwise unsupported by the evidence.[60] Before declining to give any weight to the opinions of a treating

---

[56]   *Newton v. Apfel*, 209 F.3d at 455.

[57]   *Pineda v. Astrue*, 289 Fed. App'x 710, 712-713 (5th Cir. 2008), citing *Newton v. Apfel*, 209 F.3d at 455.

[58]   20 C.F.R. § 404.1527(c)(2).  See, also, *Loza v. Apfel*, 219 F.3d at 393.

[59]   *Thibodeaux v. Astrue*, 324 Fed. App'x 440, 443-444 (5th Cir. 2009).

[60]   *Thibodeaux v. Astrue*, 324 Fed. App'x at 443-444.

-11-

doctor, an ALJ must also consider the length of treatment by the physician, the frequency of his examination of the claimant, the nature and extent of the doctor-patient relationship, the support provided by other evidence, the consistency of the treating physician's opinion with the record, and the treating doctor's area of specialization, if any.[61] In this case, the ALJ made no such evaluation. Consequently, the undersigned finds that the ALJ improperly discounted Dr. Guidry's opinions.

A physician qualifies as a treating source if the claimant sees the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the claimant's medical conditions.[62] In this case, Ms. Brown has treated primarily with Dr. Guidry at University Medical Center ("UMC") in Lafayette, Louisiana since September 2010. At the time of the hearing, Ms. Brown was seeing Dr. Guidry every month.[63] She was also being treated in UMC's cardiology clinic.

Because Dr. Guidry is Ms. Brown's treating physician, the ALJ should have accorded his opinions great weight or set forth good cause for not doing so. In this case, Dr. Guidry opined that Ms. Brown is unable to reliably work an eight-hour day,

---

[61] *Myers v. Apfel*, 238 F.3d 617, 621 (5th Cir. 2001); *Newton v. Apfel*, 209 F.3d at 456.

[62] *Huet v. Astrue*, 375 Fed. App'x 373, 376 (5th Cir. 2010), citing 20 C.F.R. § 404.1502.

[63] Rec. Doc. 7-1 at 42.

five days per week because of the side effects of her medication, which include drowsiness and/or sedation and dizziness.[64] Additionally, Dr. Guidry stated that the adverse effects of her medication, her fatigue, and tremors enhanced by stress will require her to take two to three fifteen to thirty minute unscheduled breaks during the work day.[65] But the ALJ found that Ms. Brown has the residual functional capacity to perform sedentary work with the exception that she is precluded from performing certain physical activities while at work. This finding is incompatible with Dr. Guidry's opinions.

The ALJ expressly gave Dr. Guidry's opinions "little weight because it is inconsistent with the medical record as a whole."[66] The ALJ seems to have based this conclusion on "some evidence that the claimant has not been entirely compliant in taking prescribed medications"[67] and on the conclusion that "[a]lthough the claimant testified she experiences side effects from her medications, the medical records, such as office treatment notes, do not corroborate those allegations."[68]

---

[64]  Rec. Doc. 7-1 at 306.

[65]  Rec. Doc. 7-1 at 306.

[66]  Rec. Doc. 7-1 at 23.

[67]  Rec. Doc. 7-1 at 22-23.

[68]  Rec. Doc. 7-1 at 23.

The record contains only two references to Ms. Brown's being noncompliant with her medications. One concerns her not taking a Wellbutrin prescription because it was too expensive,[69] and the other, from July 27, 2009, indicates that Ms. Brown was taking her blood pressure medication only if she felt her blood pressure was going up.[70] After that date, there is no evidence in the record that Ms. Brown was not compliant with medication. To the contrary, there are numerous indications that she was compliant.[71] Therefore, the evidence in the record does not support the ALJ's conclusion that Ms. Brown's noncompliance with her prescribed medication suggests that her symptoms were not as limiting as she alleged.

The evidence in the record also fails to support the ALJ's conclusion that the medical records do not corroborate her allegations that the side effects of her medication preclude her from working a normal forty-hour week. The medical records contain numerous complaints of fatigue.[72] Although one of the complaints was made at a time when Ms. Brown was babysitting her grandchildren and she reported that the children were wearing her out,[73] this does not rule out the possibility

---

[69] Rec. Doc. 7-1 at 216.

[70] Rec. Doc. 7-1 at 219.

[71] Rec. Doc. 7-1 at 195, 238, 248, 253, 262, 309.

[72] Rec. Doc. 7-1 at 216, 259, 248, 269.

[73] Rec. Doc. 7-1 at 216.

that she would have been better able to keep up with the children if her medication did not cause drowsiness or sedation. Ms. Brown testified at the hearing that, while she was working with children, she "would fight my sleep. . . to stay up with them."[74] On March 24, 2011, Ms. Brown expressly connected her fatigue with her medications, telling the nurse taking her history that she has fatigue "especially with Clonodine."[75] At the hearing, she testified that her prescribed medications make her very tired[76] and that she spends a large part of each day sleeping.[77]

Dr. Guidry confirmed in his notes that the medication prescribed for Ms. Brown's hypertension does, in fact, cause drowsiness or sedation.[78] His treatment note of October 19, 2011 reads as follows: "Fatigue: meds make the pt. [patient] tired all the time, excessively sleepy."[79] He also noted that day that Ms. Brown's general appearance was "sleepy."[80] When Ms. Brown was examined by Dr. Alfred

---

[74] Rec. Doc. 7-1 at 50.

[75] Rec. Doc. 7-1 at 248.

[76] Rec. Doc. 7-1 at 38.

[77] Rec. Doc. 7-1 at 41-42.

[78] Rec. Doc. 7-1 at 306.

[79] Rec. Doc. 7-1 at 309.

[80] Rec. Doc. 7-1 at 310.

E. Buxton, a clinical psychologist, at the request of Disability Determination Services, he consistently noted that her "[e]nergy is a bit poor."[81]

The law is clear that "[t]he ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position."[82] Furthermore, it is improper for an ALJ to rely upon his own unsupported opinion as to the limitations presented by the applicant's medical conditions.[83] There is no evidence in the record that contradicts Dr. Guidry's findings or his opinions. Like Dr. Guidry, Dr. Toliver found that Ms. Brown suffers with uncontrolled high blood pressure. Unlike Dr. Guidry, however, Dr. Toliver did not evaluate the side effects of Ms. Brown's medications. The ALJ gave Dr. Toliver's opinions moderate weight and found that they are "consistent with the medical record as a whole."[84] But the ALJ misquoted Dr. Toliver's conclusion, stating: "Dr. Toliver determined the claimant could stand for a total of 2 hours in an 8 hour work day; she can walk on level ground for a total of 30 minutes; she can sit for 30 minutes; and she can lift 10 pounds."[85] Those opinions are not set forth in Dr. Toliver's report; that is what Dr.

---

[81] Rec. Doc. 7-1 at 231.

[82] *Loza v. Apfel*, 219 F.3d at 393.

[83] *Williams v. Astrue*, 355 Fed. App'x 828, 832 n. 6 (5th Cir. 2009).

[84] Rec. Doc. 7-1 at 24.

[85] Rec. Doc. 7-1 at 24.

Toliver reported that Ms. Brown told him when he was taking her history. His conclusions as to her functional capacity are different. Dr. Toliver opined as to Ms. Brown's physical capabilities, stating that she is able to lift ten to fifteen pounds, to stand for thirty minutes to an hour at a time, and to sit for three to four hours at a time with regular breaks in between.[86] The need for taking breaks set forth in Dr. Toliver's report is not inconsistent with Dr. Guidry's conclusion that Ms. Brown would likely need to take two to three unscheduled breaks of fifteen to thirty minutes each during a work day.

Dr. Guidry's opinions are not conclusory, they are not unsupported by medically acceptable clinical laboratory diagnostic techniques, and they are not otherwise unsupported by the evidence. Accordingly, the undersigned finds that the ALJ failed to show good cause for discounting Dr. Guidry's opinions and, for that reason, failed to apply the proper legal standard when deciding to reject the opinions of Ms. Brown's treating physician. The undersigned recommends that this matter be remanded so that the proper weight may be given to Dr. Guidry's opinions and so that Ms. Brown's residual functional capacity can be reevaluated.

---

[86]   Rec. Doc. 7-1 at 224.

### B. THE EFFECT OF MEDICATIONS ON MS. BROWN'S RESIDUAL FUNCTIONAL CAPACITY

Ms. Brown's second argument is that the ALJ failed to properly consider the side effects of her medications when evaluating her residual functional capacity. The ALJ found that "[a]lthough the claimant testified she experiences side effects from her medications, the medical records, such as office treatment notes, do not corroborate those allegations."[87] As noted above, however, Ms. Brown does correlate her fatigue and sleepiness with her medications, and her treating physician Dr. Guidry confirmed that the medications she is prescribed for her uncontrolled hypertension do cause drowsiness and sedation. Therefore, the ALJ's conclusion is not supported by the evidence in the record.

The ALJ is required to consider the side effects of medication when evaluating a claimant's symptoms and also when evaluating a claimant's residual functional capacity.[88] Accordingly, the undersigned recommends that this matter be remanded so that Ms. Brown's residual functional capacity can be reevaluated with due consideration given to the side effects of her medications.

---

[87] Rec. Doc. 7-1 at 23.

[88] 20 C.F.R. §§404.1529(c)(3)(iv) and 416.929(c)(3)(iv); *Crowley v. Apfel*, 197 F.3d 194, 199 (5th Cir. 1999).

## CONCLUSION AND RECOMMENDATION

For the reasons explained above, the undersigned finds that the Commissioner's ruling that Ms. Brown is not disabled is not supported by substantial evidence and was reached by the application of improper legal standards. Accordingly,

**IT IS THE RECOMMENDATION** of the undersigned that the decision of the Commissioner be REVERSED and REMANDED for further consideration in accordance with the foregoing discussion. In particular, the Commissioner should (1) afford Ms. Brown an opportunity to update the record by submitting her medical records for the time period from the date of the last hearing forward; (2) afford Ms. Brown another hearing; (3) either give controlling weight to the opinions of Ms. Brown's treating physician(s) or set forth good cause for not doing so; (4) thoroughly evaluate Ms. Brown's residual functional capacity, and (5) determine whether Ms. Brown is disabled.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed in Lafayette, Louisiana, this 12th day of June 2014.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE